UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CORNELIUS CANNADY, SR.,                                                                 PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 1:20-CV-130-HSO-RPM

RONALD WOODALL,                                                                         DEFENDANT

**REPORT AND RECOMMENDATIONS**

### I.     INTRODUCTION

Before the Court is a motion by defendant Ronald Woodall ("Dr. Woodall") seeking summary judgment on the grounds that plaintiff Cornelius Cannady ("Cannady") failed to exhaust his administrative remedies. Doc. [45]. In support, Dr. Woodall argues that Cannady's grievance did not put Dr. Woodall or his staff on notice that Cannady was "experiencing pain or believe[d] he [wa]s suffering from an infection" or identify "which provider" failed to treat him. Doc. [46], at 6–7. As Dr. Woodall does not otherwise challenge the adequacy of exhaustion, the narrow question presented is whether Cannady's grievance gave prison officials "fair notice" of the "problem that . . . form[ed] the basis of . . . [his] suit." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (citing *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003)).  This motion is opposed. Doc. [52].

### II.     Relevant Background

The Court begins with the allegations in the Complaint. Doc. [1]. In early 2018, Cannady allegedly began "submit[ting] sick-calls" seeking a circumcision because he was unable to "pull his foreskin back to clean around his penis." *Id.*, at 4. On May 10, 2018, Dr. Woodall allegedly treated "severe scar tissue around . . . [Cannady's] penis[]" with A&D ointment. *Ibid.* Dr. Woodall,

Cannady alleges, "knew [that his foreskin] needed to be removed by circumcision" and that he "suffered [from a penile] infection[.]" *Id.*, at 3–4. Notwithstanding his knowledge, Dr. Woodall allegedly "disregarded an excessive risk to Cannady[.]" *Id.*, at 4. In December 2018, Cannady was transferred to Mississippi State Prison, where Nurse Practitioner Brown "evaluated" and "diagnosed him . . . [with] severe scar tissue around his penis that needed remov[al] by circumcision." *Id.*, at 5. A consulting physician concurred with NP Brown's assessment. *Ibid.* On February 14, 2019, Cannady was circumcised. *Ibid.* He was also "provided Batin . . . for the infection [that] he had been suffering for several months." *Ibid.*

In connection with the above events, Cannady filed a grievance on May 28, 2018. *See* Doc. [45], Ex. 1. He stated:

> I have been denied adequate medical treatment and denied my First Amendment [r]ights. As a Jehovah's Witnesses [sic] I am under command to keep my body clean . . . . I have very dry skin and can't pull my foreskin back to clean myself properly. For months, I have put in sick calls and all I was given was [sic] A&D ointment. I need to see a dermatologist because the A&D ointment is not working. (Outside Care)
>
> Relief Sought
>
> I want to see a dermatologist to see [sic] if I have to be circumcise [sic] or given some kind of skin treatment to solve my problem, so that I am worship [sic] my God Jehovah in a clean state. Thanking you in advance for your time, attention, and assistance in this matter, may my God Jehovah bless you and yours.
>
> [Doc. [45], Ex. 1, at 4.][1]

After Cannady's grievance was accepted into the Mississippi Department of Corrections' ("MDOC") Administrative Remedies Program ("ARP") and characterized as a "medical treatment" grievance, Dr. Woodall provided the first-step response. *Id.*, Ex. 1, at 3. He stated:

---

[1] In a contemporaneous sick call, Cannady stated that "it be hard [sic] for me to pull my foreskin back to pee at times." Doc. [57], at 3.

2

"Cornelius Cannady, T4697, evaluated 5/10/18 for dry skin with inmate denies [sic] current problem; previous treatment of A+D ointment with no indifference to care." *Id.*, Ex. 1, at 7. Unsatisfied with this response, Cannady proceeded to the second step, explaining: "I need to be circumcised, I can't pull my foreskin back to clean myself. As a Jehovah's Witness, I must keep myself clean." *Ibid.* On November 14, 2018, Dr. Woodall also provided the second-step response, stating: "Cornelius Cannady, 14697, no new issues raised from 1st step with treatment provided; claim with no merit." *Id.*, Ex. 1, at 9–10.

After these events, Cannady filed the instant lawsuit asserting a single medical deliberate indifference claim against Dr. Woodall. *See*, *e.g.*, Doc. [29], at 8.

### III.    Standard of Review

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "All facts and inferences must be viewed in the light most favorable to the non-movant." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (citation omitted). "'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quotation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Since "[f]ailure to exhaust is an affirmative defense," the defendant has the "burden of demonstrating that [the plaintiff] failed to exhaust [his] administrative remedies[.]" *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (citation omitted). At the summary judgment stage, however, a failure to exhaust affirmative defense is treated slightly differently than most other affirmative defenses. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Exhaustion of administrative remedies is a "rule of judicial administration" that is "akin to doctrines like 'abstention, finality, and ripeness . . . [which] govern the timing of federal-court decision-making.'" *Id.* at 272 (citation omitted). Since exhaustion is a "threshold issue" that the Court "must address to determine whether litigation is being conducted in the right forum at the right time," the Court "may resolve factual disputes concerning exhaustion without the participation of a jury." *Ibid.*

### IV. Analysis

"[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.]" *Johnson*, 385 F.3d at 522. When reviewing whether the substance of a prisoner's grievance is legally sufficient for exhaustion purposes, therefore, the Court asks whether the prisoner's grievance provided "fair notice" to prison officials about the "problem that [] form[ed] the basis of . . . [his] suit." *Id.* at 516 (citation omitted). That is, the grievance must be "sufficient in detail to give officials 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 788 (5th Cir. 2012) (quotation omitted). By the same token, however, a grievance is *not* reviewed as "a summons and complaint that initiates adversarial litigation." *Johnson*, 385 F.3d at 522. *See also Patterson v. Stanley*, 547 F. App'x 510, 511–12 (5th Cir. 2013). Finally, the Court must view the specificity requirement in the light of the prison's own rules. *Johnson*, 385 F.3d at 517. Under MDOC rules, "the prisoner must . . . '*present as many*

4

*facts as possible* to answer all [of] the questions[, including the] who, what, when, where, and how concerning the incident.'" *Boyd v. Gaddis*, No. 3:20–CV–420–TSL–RPM, 2021 WL 4047392, at *2 (S.D. Miss. Aug. 13, 2021) (quoting Mississippi Department of Corrections Handbook [MDOC Handbook], at Ch. VIII) (emphasis added), *adopted*, No. 3:20–CV–420–TSL–RPM, 2021 WL 4037866 (S.D. Miss. Sept. 3, 2021).

Here, Cannady's grievance plainly gave prison officials a fair opportunity to "address the problem that . . . later form[ed] the basis of the lawsuit." *Johnson*, 385 F.3d at 517. In his Complaint, Cannady alleges that Dr. Woodall continued to treat him with A&D ointment notwithstanding his repeated complaints that the ointment did not provide medical relief. Doc. [1], at 4–5. In a strikingly similar grievance, Cannady detailed a lack of "adequate treatment" from prison medical staff, "very dry skin," foreskin issues, A&D ointment ineffectiveness, and a demand for more invasive treatment. Doc. [1]; [45], Ex. 1, at 4.[2] Attempting to distinguish Cannady's lawsuit from his grievance, Dr. Woodall points out that Cannady's grievance did not specifically refer to pain or an infection. Doc. [46], at 6. Starting with the issue of infection, Cannady is not a doctor and need not diagnose himself with medical precision. *Compare Johnson*, 385 F.3d at 516–17, *with* Doc. [46], at 6. Indeed, the MDOC rules only demand that that a prisoner "present as many facts *as possible*" about his problem. MDOC Handbook, at Ch. VIII (emphasis added).  Turning to the issue of pain, Cannady's grievance details a denial of "adequate" medical treatment, ineffective medication, very dry skin, ongoing foreskin issues, and a request for treatment by an offsite dermatologist to "solve[] [his] problem." Doc. [45], Ex. 1, at 4. By inescapable inference, Cannady clearly believed that he was suffering from a medical condition and sought relief therefrom. *Herschberger v. Lumpkin*, 843 F. App'x 587, 591–92 (5th Cir. 2021).

---

[2] Likewise, in a contemporaneous sick call referenced in his grievance, Cannady spoke of urination issues related to his foreskin. Doc. [57], at 3.

5

As a result, the subject-matter of Cannady's grievance put prison officials on fair notice of the facts that "form[ed] the basis of . . . [his] suit." *Johnson*, 385 F.3d at 516 (citation omitted).

Citing three unpublished cases, Dr. Woodall appears to also argue that a prisoner must name every offending prison official in his grievance to properly exhaust. Doc. [46], at 6–7. However, the cited cases do not stand for such a proposition. *See Mann v. Davis*, No. 6:16–CV–1315, 2021 WL 971042, at *6–*7 (E.D. Tex. Jan. 21, 2021) (noting that prisoner need not necessarily name offending official), *adopted*, No. 6:16–CV–1315–JDK–KNM, 2021 WL 963740 (E.D. Tex. Mar. 15, 2021); *Hayes v. Dunn*, No. 3:14–CV–468–LRA, 2016 WL 884654, at *3 (S.D. Miss. Mar. 7, 2016) (same); *Lee v. Epps*, No. 1:15–CV–203–LG–RHW, 2017 WL 6211055, at *5 (S.D. Miss. Nov. 9, 2017) (identifying fact-specific reasons why prisoner's grievance was insufficiently detailed), *adopted*, No. 1:15–CV–203–LG–RHW, 2017 WL 6210285 (S.D. Miss. Dec. 8, 2017). In any event, Fifth Circuit precedent is clear that no such bright-line rule exists. *Johnson*, 385 F.3d at 522.[3]

Dr. Woodall further contends that Cannady's grievance did not specifically identify who responded to his sick calls or treated him. Doc. [46], at 7. While Cannady's grievance only refers to the South Mississippi Correctional Institution ("SMCI") medical staff, the touchstone of the Court's inquiry is whether Cannady "alert[ed] prison officials to a *problem*, not [whether he] provide[d] personal notice to a particular official that he may be sued." *Johnson*, 385 F.3d at 522 (emphasis added). Once again, a grievance is *not* reviewed as "a summons and complaint that initiates adversarial litigation." *Johnson*, 385 F.3d at 522. Nevertheless, while Cannady did not need to identify Dr. Woodall by name, he needed to provide "information about the incident that

---

[3] Likewise, while the MDOC rules demand that prisoners "present as many facts as possible," courts have rejected the proposition that these rules require a prisoner to always name an official in his grievance. *See Ables v. Hall*, No. 4:18–CV–187–JMV, 2019 WL 2203112, at *1 n.3 (N.D. Miss. May 21, 2019); *J.H. v. Mgmt. & Training Corp.*, No. 3:16–CV–802–CWR–LRA, 2017 WL 4847532, at *2 (S.D. Miss. Oct. 26, 2017).

would permit an investigation of the matter." *Johnson*, 385 F.3d at 517. Far exceeding this requirement, Cannady provided his own identity, complained-of medical condition, then-present medical treatment, the length of time he was experiencing the condition, and his lack of satisfaction with ongoing medical treatment. *Compare* Doc. [45], Ex. 1, at 4, *with Lee*, 2017 WL 6211055, at *5. Furthermore, Dr. Woodall was SMCI's Medical Director. Doc. [45], Ex. 1. On the present record, he was the only physician to oversee Cannady's treatment around the time that his grievance was filed. Doc. [45], Ex. 1; *Dillon*, 596 F.3d at 266. Indeed, Cannady requested treatment by an offsite *dermatologist*, reflecting dissatisfaction with treatment by the only known *physician* of record, Dr. Woodall. *Compare* Doc. [45], Ex. 1, at 4, *with Mann*, 2021 WL 971042, at *6–*7. *See also Dillon*, 596 F.3d at 266. Finally, Dr. Woodall's own conduct and actions undermine his present motion. Dr. Woodall himself responded to Cannady's grievance at both ARP steps, Doc. [45], Ex. 1, at 4, 10, so he was positioned to remedy Cannady's complained-of medical issue, *Boyd*, 2021 WL 4047392, at *4. Likewise, in his first step response, Dr. Woodall *specifically referred to* contemporaneous medical treatment that Cannady received for the medical condition that forms the basis of the instant lawsuit. Doc. [45], Ex. 1, at 7.

For these reasons, Cannady's grievance provided sufficient detail to put prison officials on fair notice that he was aggrieved by the medical treatment he received under Dr. Woodall's care. *Herschberger*, 843 F. App'x at 591–92; MDOC Handbook, at Ch. VIII.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Dr. Woodall's motion for summary judgment should be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 27th day of April 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE