**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CORNELIUS CANNADY, SR.** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:20cv130-HSO-RPM** |
| | § | |
| | § | |
| **DR. RONALD WOODALL** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION [65]; ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [64]; AND DENYING DEFENDANT'S MOTION [45] FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

BEFORE THE COURT are Defendant Dr. Ronald Woodall's Objection [65] to the Report and Recommendation [64] of United States Magistrate Judge Robert P. Myers, Jr.; Cornelius Cannady, Sr.'s Response [67]; Defendant's Reply [68]; and Defendant's Motion [45] for Summary Judgment for Failure to Exhaust Administrative Remedies.   Based upon a review of the parties' submissions, the record, and relevant legal authority, the Magistrate Judge recommended that Defendant's Motion [45] for Summary Judgment for Failure to Exhaust Administrative Remedies be denied.   *See* R. & R. [64] at 7.

After thoroughly reviewing Defendant's Objection [65], the Response [67], the Reply [68], the Magistrate Judge's Report and Recommendation [64], the record, and relevant legal authority, the Court finds that Defendant's Objection [65] should be overruled, the Magistrate Judge's Report and Recommendation [64] should be adopted, and Defendant's Motion [45] for Summary Judgment for Failure to

Exhaust Administrative Remedies should be denied.

## I.   BACKGROUND

A.   Cannady's grievances

Plaintiff Cornelius Cannady, Sr. ("Plaintiff" or "Cannady") is a postconviction inmate in the custody of the Mississippi Department of Corrections ("MDOC").   *See* Compl. [1].   On March 25, 2020,[1] he filed the Complaint [1] in this case, advancing claims under 42 U.S.C. § 1983 arising out of his medical treatment while incarcerated at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi.   *See id.* at 1-2, 4.   The Complaint names Dr. Ronald Woodall ("Defendant" or "Dr. Woodall") as the sole Defendant.   *See id.*

Prior to filing his Complaint, Cannady submitted a grievance concerning his medical treatment through the MDOC's Administrative Remedy Program ("ARP"), which stated as follows:

> I have been denied adequate medical treatment and denied my First Amendment Rights.   As a Jehovah's Witnesses [sic] I am under command to keep my body clean. (1 Peter 1:15-16)   I have very dry skin and can't pull my foreskin back to clean myself properly.   For months I have put in sick calls and all I was given was A+D Ointment.   I need to see a dermatologist because the A+D Ointment is not working. (Outside Care)
>
> Relief Sought
> I want to see a dermatologist to see if I have to be circumcise[d], or given some kind of skin treatment to solve my problem, so that I can worship my God Jehovah in a clean state . . . .

Ex. [45-1] at 4.

---

[1]   Cannady signed the Complaint on March 25, 2020, and it was docketed by the Clerk of Court on April 1, 2020.   *See* Compl. [1] at 1, 4.

At this first step of the ARP process, Dr. Woodall responded that Cannady had been "[e]valuated 5/10/18 for dry skin with [sic] inmate denies current problem; previous treatment of A+D Ointment with no indifference to care." *Id.* at 7.   On August 10, 2018, Cannady indicated that he was not satisfied with the first-step response and wished to proceed to the second step of the process.   *Id.*   According to Cannady, "I need to be circumcise[d], I can't pull my foreskin back to clean myself. As a Jehovah's Witnesses [sic] I must keep myself clean."   *Id.*   The second-step response from Dr. Woodall stated, "no new issues raised from 1st step with treatment provided; claim with no merit."   *Id.* at 9.

On December 3, 2018, Cannady filed an action for judicial review in the Circuit Court of Greene County, Mississippi.   *See* Ex. [1-1] at 5.   According to the state court's order denying Cannady's motion for judicial review, Cannady claimed that "MDOC has deliberately shown indifference to a serious medical need which is unnecessarily causing him pain, namely MDOC's inaction regarding his request for a circumcision" in violation of his Eighth Amendment rights.   The state court determined from the first- and second-step ARP responses and the motion that Cannady had not shown that MDOC officials violated his Eighth Amendment rights, and it denied his motion.   *See id.* at 7.

Sometime in December 2018 or January 2019, Cannady was transferred the Mississippi State Penitentiary (the "MSP").   *See* Compl. [1] at 5.   According to Cannady, upon his arrival at the MSP a nurse practitioner "diagnosed him as having severe scar tissue around his penis that needed removing by circumcision"

3

and referred him to a physician at a different facility.   *Id.* at 5.   Cannady asserts

that the physician also diagnosed him "as having severe scar tissue around his

penis, ordered blood work, and schedule[d] him for surgery."   *Id.*   On February 14,

2019, the physician "performed the needed surgery of circumcision, and provided

Batin [sic] to Cannady for the infection he had been suffering for several months."

*Id.*

Cannady then filed this suit against Dr. Woodall, advancing claims

concerning the inadequacy of his medical treatment.   *See id.*   The Complaint

alleges that in February 2018, Cannady submitted a sick call request to the SMCI

infirmary seeking a circumcision because he had "severe scar tissue around his

penis" which prevented him from cleaning the area.   *Id.* at 4-5.   Cannady asserts

that he "was intentionally treated incorrectly by Dr. Woodall [by] prescribing A+D

Ointment" when Dr. Woodall knew that the proper treatment was circumcision.

*Id.*   Cannady also alleges that he suffered an infection that Dr. Woodall "knew of

and disregarded," which was "an excessive risk to Cannady's health and/or safety."

*Id.* at 5.

B.   <u>Dr. Woodall's Motion [45] for Summary Judgment</u>

Dr. Woodall has filed a Motion [45] for Summary Judgment for Failure to

Exhaust Administrative Remedies, arguing that Cannady did not properly exhaust

his available remedies under the Prison Litigation Reform Act (the "PLRA"), 42

U.S.C. § 1997e(a), before filing suit.   *See* Mot. [45]; Mem. [46] at 3-7.   Dr. Woodall

contends that Cannady's medical grievance submitted through the ARP did not

4

afford him the fair notice required by the PLRA.   *See* Mem. [46] at 6-7.

Cannady responds that "[t]he heightened standard of notice advanced by the Defendant is not the present requirement, and thus should not be applied to this case."   Mem. [53] at 3.   Cannady maintains that he provided Dr. Woodall with sufficient notice, but that even if he did not fully exhaust, he followed all of the procedures that were available to him such that his failure to exhaust should be excused.   *See id.* at 4-6.

In his Reply [54], Dr. Woodall states that there is nothing in the record to indicate that he was responsible for the treatment that was the subject of Cannady's grievance, and that Cannady's medical records indicate that he received treatment from at least three additional providers during the relevant time period. *See* Reply [54] at 1-3.   Dr. Woodall again insists that Cannady's grievance did not provide sufficient detail and that he did not follow the administrative procedures that were available to him because the grievance was insufficient to place Dr. Woodall on notice of the issue that forms the basis the claim in this case.   *See id.* at 2-5.

C.   The Magistrate Judge's Report and Recommendation [64]

The Magistrate Judge entered a Report and Recommendation [64] determining that Cannady's grievance gave prison officials a fair opportunity to address the problem that forms the basis of this lawsuit, and recommending that Dr. Woodall's Motion for Summary Judgment be denied.   *See* R. & R. [64] at 5-7. As for Dr. Woodall's argument that the grievance did not refer to an infection, the

Magistrate Judge concluded that "Cannady is not a doctor and need not diagnose himself with medical precision."   *Id.* at 5.   Nor did the Magistrate Judge find persuasive Dr. Woodall's argument that there was a failure to exhaust simply because Cannady did not specifically name him in the grievance.   *See id.* at 6-7.

D.   Dr. Woodall's Objection [65]

Dr. Woodall has filed an Objection [65] to the Report and Recommendation [64].   *See* Obj. [65].   He insists that the Report and Recommendation "errs by failing to give sufficient weight to the MDOC ARP's specificity requirements" and "diverges from this Court's consensus that MDOC's ARP requires far more detail than Cannady's grievance provided."   *Id.* at 1.

According to Dr. Woodall, despite Cannady's allegations in the Complaint that he was treated by Dr. Woodall in May 2018, his medical records reflect that between February and June 2018 "several providers saw Cannady who provided him with ointment in response to complaints of dry skin, but Dr. Woodall was not among them."   *Id.* at 2-3.   Dr. Woodall maintains that Cannady's grievance did not properly exhaust his constitutional claims because it "provided no facts suggesting that Dr. Woodall had caused the constitutional violation Cannady now claims—that Dr. Woodall knew, but failed to treat, Cannady's alleged infection." *Id.* at 7-8; *see id.* at 11-13.   Dr. Woodall contends that Cannady's complaints about the treatment he received did not properly identify or describe any medical provider and did not suggest that he was suffering from an infection, which is insufficient to properly exhaust under the Fifth Circuit's strict approach to exhaustion.   *See id.* at

9-15.

Finally, Dr. Woodall argues that any suggestion by the Report and Recommendation that his position as medical director makes him vicariously liable as the only physician to oversee Cannady's treatment at the time his grievance was filed improperly imposes supervisory liability for malpractice.   *See id.* at 16-17.

> Dr. Woodall does not dispute that Cannady now *alleges* that Dr. Woodall was personally involved in what Cannady claims was a constitutional violation. The issue is what the grievance says and, more importantly, what it does not say . . . .   [T]he grievance does not reference Dr. Woodall, nor does it provide any facts that call into question the facility's medical director versus any other provider.

*Id.* at 17 (emphasis in original).

## II.   DISCUSSION

### A.   Relevant standards of review

Because Dr. Woodall has submitted a written Objection [65] to the Magistrate Judge's Report and Recommendation [64], the Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).   Under a de novo review, the district court makes its "own determination based upon the record and unrestrained by the findings and conclusions of the magistrate."   *United States v. Wilson*, 864 F.2d 1219, 1222 (5th Cir. 1989).   In conducting a de novo review, the Court is not "required to reiterate the findings and conclusions of the magistrate judge."   *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993).   As for those portions of a report and recommendation to which there are no objections, a court applies "the clearly erroneous, abuse of

7

discretion and contrary to law standard of review." *Wilson*, 864 F.2d at 1221
(quotation omitted).

Federal Rule of Civil Procedure 56(a) provides that summary judgment is
appropriate "if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). "There is no genuine issue for trial if the record, taken as a whole,
could not lead a rational trier of fact to find for the non-moving party." *Petzold v.
Rostollan*, 946 F.3d 242, 247 (5th Cir. 2019) (quotation omitted). In considering a
request for summary judgment, a court must "view all facts in the light most
favorable to the non-movant . . . and draw all reasonable inferences in his favor."
*Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021), *cert. denied*, No. 21-1362, 2022 WL
1611817 (U.S. May 23, 2022).

B.    Analysis

1.    The PLRA's exhaustion requirement

The PLRA contains a mandatory exhaustion requirement that "precludes
prisoners from asserting § 1983 claims regarding prison conditions 'until such
administrative remedies as are available are exhausted.'" *Gray*, 18 F.4th at 469
(quoting 42 U.S.C. § 1997e(a)). "Whether a prisoner has exhausted administrative
remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266
(5th Cir. 2010).

The Fifth Circuit "takes a strict approach to the exhaustion requirement,"
and "mere substantial compliance with administrative remedy procedures does not

8

satisfy exhaustion." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quotation

omitted).   The United States Supreme Court has explained that "[r]equiring

exhaustion allows prison officials an opportunity to resolve disputes concerning the

exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549

U.S. 199, 204 (2007).   To properly exhaust, a prisoner must "give prison officials

'fair notice' of the problem that will form the basis of the prisoner's suit." *Johnson*

*v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004).

In determining whether a grievance affords prison officials sufficient notice,

the Fifth Circuit has held that "a court must interpret the exhaustion requirement

in light of its purposes, which include the goal of giving officials 'time and

opportunity to address complaints internally.'" *Id.* (quoting *Porter v. Nussle*, 534

U.S. 516, 525 (2002)).   "Nothing in the PLRA requires prisoners to identify all

defendants that they later sue," and "a grievance may sufficiently identify a person

even without providing a name." *Patterson v. Stanley*, 547 F. App'x 510, 511-12

(5th Cir. 2013); *see also Jones*, 549 U.S. at 219 (holding that "exhaustion is not *per*

*se* inadequate [under the PLRA] simply because an individual later sued was not

named in the grievances").

According to the Fifth Circuit,

> a grievance should be considered sufficient to the extent that the
> grievance gives officials a fair opportunity to address the problem that
> will later form the basis of the lawsuit.   Further, as a practical matter,
> the amount of information necessary will likely depend to some degree
> on the type of problem about which the inmate is complaining.   If an
> inmate claims that a guard acted improperly, we can assume that the
> administrators responding to the grievance would want to know—and a
> prisoner could ordinarily be expected to provide—details regarding who

9

was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter.   In contrast, a grievance in which an inmate says that his cell is habitually infested with vermin, or that the prices in the commissary are too high, could adequately alert administrators to the problem whether or not the grievance names anyone.

*Johnson*, 385 F.3d at 517.   In considering whether a prisoner has properly

exhausted a claim, a court must consider that

the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.

*Id.* at 522.

Beyond the "general practical considerations" of what details a grievance

must include,

the prison system's own rules regarding grievances provide both inmates and the courts with more specific guidance.   Since prisoners are generally required to follow the procedures adopted by the state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system . . . .

*Id.* at 517.   According to the Supreme Court, "[t]he level of detail necessary in a

grievance to comply with the grievance procedures will vary from system to system

and claim to claim, but it is the prison's requirements, and not the PLRA, that

define the boundaries of proper exhaustion."   *Jones*, 549 U.S. at 218.

This Court may "take judicial notice of the Administrative Remedy Program

(ARP) adopted by the Mississippi Department of Corrections and posted on its

website in the inmate handbook."   *Boyd v. Gower*, No. 20-60323, 2022 WL 989368,

at *1 (5th Cir. Apr. 1, 2022) (citing *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir.

2005)); *see also, e.g., Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (holding

that a court may take judicial notice of a state's website).   According to Chapter

VIII of MDOC's inmate handbook,

> [t]he original letters of request to ARP should be *as brief as possible*.
> The letter should clearly indicate the terminology "this is a request for
> administrative remedy."   The inmate *should* present as many facts as
> possible to answer all the questions *who*, what, when, where, and how
> concerning the incident.

MDOC Inmate Handbook, https://www.mdoc.ms.gov/Inmate-Info/Documents/

CHAPTER_VIII.pdf (last accessed June 17, 2022) (emphasis added).

2.   <u>Whether Cannady properly exhausted his claim</u>

Turning to the Cannady's specific claim, the Complaint alleges that in

February 2018 he submitted a sick call request to the SMCI infirmary seeking a

circumcision because he had "severe scar tissue around his penis" that prevented

him cleaning the area.   Compl. [1] at 4-5.   He alleged that he "was intentionally

treated incorrectly by Dr. Woodall [by] prescribing A+D Ointment" when Dr.

Woodall knew that the proper treatment was circumcision, and that he also suffered

an infection that Dr. Woodall "knew of and disregarded," which constituted "an

excessive risk to Cannady's health and/or safety."   *Id.*

In his ARP grievance dated May 22, 2018, Cannady referenced "sick calls"

that he had made "[f]or months" concerning his dry skin, his inability to pull his

foreskin back to clean properly, and being prescribed treatment (A+D Ointment)

that was not helping the problem.   Ex. [45-1] at 4.   Cannady stated that he needed

to see a dermatologist because the treatment was not working, and so the

11

dermatologist could determine if he needed to be circumcised or "give some kind of skin treatment to solve [his] problem." *Id.*   With the exception of the reference to an actual infection and to Dr. Woodall by name, this grievance generally mirrors the allegations in the Complaint.   *Compare id.*, *with* Compl. [1] at 4-5; *see also* Obj. [64] at 9 (asserting that Cannady's grievance "does not identify or describe any medical provider about whom he complains" and "does not suggest he was suffering from an infection").

As for the ARP's lack of any mention of an infection, the Complaint states that Cannady "suffered infection that Woodall knew of and disregarded an excessive risk to Cannady's health and/or safety."   Compl. [1] at 5 (citing Ex. B [1-1] at 2). In support of this allegation, Cannady cites Dr. Woodall's second-step response, *see id.*, in which Dr. Woodall stated that there were "no new issues raised from 1st step with treatment provided; claim with [sic] no merit," Ex. B [1-1] at 2.   Looking to the second-step response, a reasonable factfinder might conclude that Cannady could have suffered the infection in the nearly three-month period between his initial grievance and the initiation of the second step.   *See id.*

The Fifth Circuit has found that when a prisoner continues to suffer constitutional violations related to the same problem, he "need not continue to file grievances about the same issue."   *Johnson*, 385 F.3d at 521 (collecting cases). Dr. Woodall has not sufficiently addressed this issue, and to the extent he requests summary judgment based upon Cannady's failure to specifically mention an infection related to the medical treatment he received, such an argument is not well

taken.

Turning to the omission of Dr. Woodall's name in the ARP grievance, the Court must consider whether it nevertheless gave "officials a fair opportunity to address the problem" that now forms the basis of this lawsuit. *See Johnson*, 385 F.3d at 517.   In support of his Motion for Summary Judgment, Dr. Woodall has not adequately shown that the information in Cannady's grievance would not have permitted an investigation of his ongoing medical treatment by prison officials, particularly given the small number of providers at the facility who treated Cannady during the relevant time period, and the fact that MDOC apparently keeps records of each visit and documents who treats each prisoner.   *See id.*; Ex. [57] (filed under restricted access);[2] *see also* Obj. [65] at 2-3 (stating that "several providers saw Cannady" during the relevant time period).   While Dr. Woodall contends that Cannady's "grievances did not provide Dr. Woodall with fair notice as required," Mem. [46] at 3, "the primary purpose of a grievance is to alert *prison officials* to a problem, not to provide personal notice to a particular official that he may be sued," *Johnson*, 385 F.3d at 522 (emphasis added).

The Court is cognizant that MDOC's own rules provide more specific guidance concerning the detail required in a particular grievance, but Dr. Woodall has not shown in this specific case that Cannady's ARP grievance failed to comply with MDOC's requirements.   *See id.* at 517.   The MDOC inmate handbook states

---

[2]  It is unclear whether Dr. Woodall has supplied all of Cannady's medical records for the relevant time period.

simply that the "inmate should present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident."   MDOC Inmate Handbook, https://www.mdoc.ms.gov/Inmate-Info/Documents/ CHAPTER_VIII.pdf (last accessed June 17, 2022).   In many cases, an inmate will be required to specifically name an individual to properly exhaust a claim, *see id.*, but as the Supreme Court has explained, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from . . . claim to claim," *Jones*, 549 U.S. at 218; *see also, e.g., Patterson*, 547 F. App'x 511-12 ("a grievance may sufficiently identify a person even without providing a name"). Under the facts of this particular case, Cannady provided sufficient details to properly exhaust his claims.   *See Jones*, 549 U.S. at 218; *Dillon*, 596 F.3d at 266.

Dr. Woodall's Objection [65] concerning exhaustion is not well taken and will be overruled, and his Motion [45] for Summary Judgment should therefore be denied.

3.   Dr. Woodall's respondeat superior arguments

To the extent Dr. Woodall expresses concern that the Report and Recommendation [64] imposes vicarious or respondeat-superior liability based upon his supervisory position, *see* Obj. [65] at 16-17, he is mistaken.    The Report and Recommendation [64] speaks only to the question of exhaustion, not whether Dr. Woodall can ultimately be held individually liable on Cannady's claims under 42 U.S.C. § 1983.   *See* R. & R. [64].   Dr. Woodall's Objection [65] blurs the distinction between the two and supposes that Dr. Woodall never treated Cannady for this

14

particular medical issue.   *See* Obj. [65] at 17 (stating that under the Report and Recommendation's "reasoning, a grievance concerning only another provider's medical care would properly exhaust a constitutional claim against the facility's medical director, because the medical director is in a position to supervise that care and investigate the grievance").   It is unclear whether Dr. Woodall has submitted all of the medical records that may relate to Cannady's Complaint [1], and he has cited no evidence to this effect.   *See, e.g., Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").[3]

Moreover, the Court is well aware that "[s]ection 1983 does not impose vicarious or respondeat-superior liability."   *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quotation omitted).   The fact that Cannady may have properly exhausted his claim is entirely distinct from whether he can ultimately prove Dr. Woodall liable under § 1983, and the Court's resolution of Dr. Woodall's Objection [65] does not speak in any way to his liability.   Dr. Woodall's Objection [65] on this point is not well taken and will be overruled.

## III.   CONCLUSION

Following a de novo review of the record, Dr. Woodall's Objection [65] should be overruled, and the Magistrate Judge's Report and Recommendation [64] should

---

[3]  The Complaint [1] refers to sick calls made in February 2018 concerning the "circumcision issue," where Cannady was prescribed A+D Ointment, Compl. [1] at 4-5, but Dr. Woodall has not filed medical records from February 2018 concerning this issue. The only visit during February 2018 documented in the medical records supplied involved Cannady's back, neck, and ears, and at that time, his "Current Medications" already included A+D Ointment.   *See* Ex. [57] at 7 (filed restricted access).

be adopted.   Dr. Woodall's Motion [45] for Summary Judgment for Failure to Exhaust Administrative Remedies will be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Dr. Ronald Woodall's Objection [65] to the Report and Recommendation [64] of United States Magistrate Judge Robert P. Myers, Jr., is **OVERRULED**, and the Report and Recommendation [64] is **ADOPTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Dr. Woodall's Motion [45] for Summary Judgment for Failure to Exhaust Administrative Remedies is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 29th day of June, 2022.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE